UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GEM COUNTY MOSQUITO ABATEMENT DISTRICT and GEM COUNTY, <br><br> Plaintiffs, <br><br> v. <br><br> ENVIRONMENTAL PROTECTION AGENCY, MICHAEL O. LEAVITT, PETER DILL, ST. JOHN'S ORGANIC FARM, and DOES 1-50, <br><br> Defendants. | Civil Action No. 03-2179 (RMC) |

**MEMORANDUM OPINION**

The Gem County Mosquito Abatement District ("GCMAD") and Gem County, Idaho, sue the Environmental Protection Agency ("EPA"), its Administrator, Michael O. Leavitt, in his official capacity (collectively, the "Federal Defendants"), and two Idaho private parties, Peter Dill and St. John's Organic Farm (collectively, the "Private Defendants"). The underlying dispute concerns GCMAD's use of pesticides to control mosquitos and mosquito larvae throughout the 2,000 square miles of Gem County that the Private Defendants have alleged is contrary to their interests in raising crops without pesticides. The Private Defendants alleged that the use of such pesticides requires a permit under the Clean Water Act ("CWA") and threatened to sue.[1] Although GCMAD believed that its activities were fully regulated by the Federal Insecticide, Fungicide and Rodenticide

---

[1] The Federal Water Pollution Control Act, 33 U.S.C. §§ 1251-1387, is commonly referred to as the Clean Water Act. Section 1342 of the CWA provides for application to EPA for a National Pollution Discharge Elimination System ("NPDES") permit, which the Private Defendants assert is required for GCMAD's pesticide applications.

Act ("FIFRA"), 7 U.S.C. § 136 *et seq.,* and that no CWA permit was necessary, it applied for such a permit to avoid litigation. EPA has not issued a permit because the Federal Defendants agree that no CWA permit is required under these circumstances. Meanwhile, the Private Defendants made good on their threat and sued the Plaintiffs in a separate action in the United States District Court for the District of Idaho.

In the instant case, GCMAD and Gem County seek a declaration that GCMAD is not required to obtain a CWA permit, as well as an injunction barring EPA or the Private Defendants from asserting that it does. In the alternative, the Plaintiffs seek an order directing the Federal Defendants to process GCMAD's application for a permit. All Defendants have filed motions to dismiss for lack of subject-matter jurisdiction and for failure to state a claim on which relief may be granted. Private Defendants also move in the alternative for transfer to Idaho federal district court. Plaintiffs oppose these motions and are joined by the Washington Potato Growers Association, *et al.*, as *amici curiae*.[2] Having considered the parties' arguments and the entire record, the Court will grant the motions to dismiss.

## BACKGROUND

Gem County is a political subdivision of the State of Idaho and contains approximately 2,000 square miles, much of it farmland. Amend. Compl. ¶ 7. Gem County is in a rural agricultural area of Idaho. In the 2000 census, Gem County's population was 15,181, *id.*, or approximately 27 people per square mile. *Id.* ¶ 16.

---

[2] The Memorandum and Brief was filed by *amici* Washington State Potato Commission, Central Oregon Potato Growers Association, Potato Growers of Washington, Willamette Valley Potato Growers, Columbia-Snake River Irrigators Association, Potato Growers of Idaho, and Washington State Horticultural Association.

Because of its terrain features and hydrology, much of the land in Gem County is suitable for mosquito habitat. *Id.* ¶ 17. In the absence of abatement activities, Gem County experiences an extremely high mosquito population. *Id.* ¶¶ 16, 17.

Established in 1960, GCMAD is a legal entity organized under the laws of the State of Idaho to undertake mosquito abatement activities against adult and larval mosquitoes. *Id.* ¶ 6. It uses chemical larvicide and pesticides that are subject to extensive regulation under FIFRA. *Id.* ¶ 6(a). These chemicals are evaluated and registered by EPA under FIFRA and their use is highly regulated. *Id.* ¶¶ 15, 23, 24.

Around August of 1999, Mr. Dill sent a letter to GCMAD demanding that it cease allowing its pesticides to enter his property. *Id.* ¶ 24.

> He complained about the noise of the airplane, perceived threats to him and his family from a potential plane crash, and a perceived threat to the certification of [St. John's Organic Farm] as an organic operation, although no activity of GCMAD to the date of this Complaint has affected any organic certification. He also demanded that GCMAD observe flight levels set by him, much of which could not be done for safety reasons, and he opposed fogging in the vicinity of his property in addition to aerial application.

*Id.* GCMAD's attempts to accommodate Mr. Dill's concerns engendered complaints from other County residents that mosquito abatement was suffering. *Id.* ¶ 25. Threatened by a lawsuit from unhappy residents, GCMAD decided to continue its activities as originally planned. *Id.*

On or about June 16, 2003, GCMAD received a "60-day notice letter" from the Private Defendants threatening a citizen's suit under the CWA and promising to seek fines and penalties if GCMAD did not cease its activities until it obtained an NPDES permit. Although

GCMAD firmly believes that its activities are regulated solely by FIFRA and that no NPDES permit is required, it submitted an application for a permit to EPA that was received by EPA on or about July 10, 2003.  As luck would have it, on the very next day, EPA's Assistant Administrators for Water and for Prevention, Pesticides, and Toxic Substances, issued an "Interim Statement and Guidance on Application of Pesticides to Waters of the United States in Compliance with FIFRA" ("Interim Guidance").  *See* Amend. Compl., Exh. A.  This interim guidance concluded that "the application of a pesticide to waters of the United States consistent with all relevant requirements of FIFRA does not constitute the discharge of a pollutant that requires an NPDES permit under the Clean Water Act" in at least two circumstances.  *Id*.  The two circumstances include application of pesticides *directly to waters* in the United States to control pests, such as mosquito larvae, and the application of pesticides to control pests that are *present over waters* of the United States, such as adult mosquitos.  *Id.*  According to the Interim Guidance, it reflected thirty years of consistent conduct by EPA.  *Id.*  After the Interim Guidance was issued, EPA sought public comments and is now considering those comments.

Because the Interim Guidance advises EPA Regional Offices that no NPDES permit need be issued when pesticides are applied in a manner consistent with FIFRA and its regulations, EPA has not issued an NPDES permit to GCMAD.  Amend. Compl. ¶ 28(b).  Indeed, an email from the EPA indicated that GCMAD would not receive a permit.  *See* Amend. Compl., Exh. B ("HQ sent out their interim guidance for pesticides of certain situations . . . .  I don't know what it will mean for you in your situation [the threatened lawsuit] but it does mean that EPA is not going to issue a permit for pesticide applications . . . .").

The Plaintiffs filed this suit in an attempt to obtain a declaration that GCMAD does

not need an NPDES permit and to avoid litigation with the Private Defendants. Four months after the complaint was filed in this case, the Private Defendants instituted litigation in Idaho, claiming that GCMAD must have an NPDES permit to use pesticides in mosquito abatement activities. That action has been stayed pending resolution of the motions to dismiss brought in this Court. *See St. John's Organic Farm v. Gem County Mosquito Abatement Dist.*, No. 04-87 (D. Idaho filed Sept. 23, 2004).

## ANALYSIS

The Plaintiffs claim that a series of actions by both the public and private defendants placed them in "an untenable position, the proverbial 'rock and a hard place.'" Opp. at 2. As explained in the Amended Complaint:

> [D]efendants Peter Dill and St. John's Farm assert than an NPDES permit is required for application of FIFRA regulated pesticides. They demand that plaintiffs cease any application of pesticides, even in accordance with FIFRA regulations and EPA approved instructions, until it obtains such a permit on pain of suffering protracted and expensive litigation and the possible imposition of significant fines and penalties. The EPA, on the other hand, *de facto* and/or *de jure* denied plaintiff's permit application.
>
> . . . .
>
> The only other alternative left to plaintiffs under the private defendants' continuing demands is to abdicate plaintiffs' statutory responsibility which will subject them to litigation and other legal sanctions [by other citizens of the County] . . . .

Amend. Compl. ¶¶ 31, 32. The prayer for relief seeks a judgment that no NPDES permits are required for the application of FIFRA-regulated pesticides, an injunction prohibiting all defendants from asserting otherwise, and, in the alternative, if the Court determines that an NPDES permit is required, an order directing EPA to process GCMAD's application for a permit.

The Plaintiffs' unenviable position notwithstanding, the Court agrees that the Plaintiffs have not articulated a "case" or "controversy" against the Federal Defendants and that no statute gives this Court subject-matter jurisdiction over claims against the Federal Defendants. Furthermore, the Court finds that the case against the Private Defendants should be dismissed for improper venue.

**MOTION TO DISMISS BY FEDERAL DEFENDANTS**

Federal courts are courts of limited jurisdiction possessing only that power authorized by Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Because "subject matter jurisdiction is an 'Art. III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)).

On a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. *Rasul v. Bush*, 215 F. Supp. 2d 55, 61 (D.D.C. 2002). *See Kokkonen*, 511 U.S. at 377 (a cause is presumed to lie outside the court's limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction). Nevertheless, the complaint must be construed liberally and a plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). *See also Macharia v. United States*, 334 F.3d 61, 64 (D.C. Cir. 2003) (because subject-matter jurisdiction focuses on the court's power to hear the claim, the court must closely scrutinize a plaintiff's factual allegations before dismissal).

*1.    Case or Controversy*

The threshold inquiry is whether the Amended Complaint alleges a "case" or "controversy" as required by both Article III of the Constitution and the Declaratory Judgment Act. *O'Shea v. Littleton*, 414 U.S. 488, 493 (1974) ("[T]hose who seek to invoke the power of federal courts must allege an actual case or controversy.").[3]

> Before undertaking to decide any dispute brought before it, a federal court must first assure itself that the dispute presented by the parties represents a justiciable "case" or "controversy"; that is, that the plaintiff suffers an actual injury fairly traceable to some challenged action of the defendant and likely to be redressed by the judicial relief requested, and that the factual claims underlying the plaintiff's challenge are concrete enough and the legal issues submitted for decision sharply focused enough to ensure that a genuine clash between the parties exists.

*Navegar, Inc. v. United States*, 103 F.3d 994, 997 (D.C. Cir. 1996). *See also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (standing requires a concrete and particularized invasion of a legally protected interest that is actual or imminent, not conjectural or hypothetical, that is fairly traceable to the challenged action of the defendant, and that is redressible by judicial action); *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (to invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision). An "actual controversy" under the Declaratory Judgment Act shares the same characteristics: "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal

---

[3] Article III of the United States Constitution limits the role of the federal courts to "cases" and "controversies." U.S. CONST., art. III, § 2. A complaint should be dismissed if: 1) there is no case or controversy; 2) the claim does not "arise under" federal law or the Constitution; or 3) the cause of action is not described in any other jurisdictional statute. *Baker v. Carr*, 369 U.S. 186, 198 (1962).

interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40 (1937) (same standard under Declaratory Judgment Act).[4] These threshold determinations required by Article III ensure that "the federal courts act only when the disputes brought before them involve sharply-defined issues pressed by truly adversary parties with a genuine stake in the outcome." *Navegar*, 103 F.3d at 998 (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967)).

The Federal Defendants argue that there is no actual controversy because there is no adverse legal interest between EPA and the Plaintiffs. Specifically, they assert that the Plaintiffs and the Federal Defendants *agree* that no CWA permit is required for the application of FIFRA-regulated pesticides, when done in a manner consistent with FIFRA and its regulations and in the two circumstances identified by EPA. Accordingly, the Federal Defendants argue that the Plaintiffs' action seeks an "impermissible and premature advisory opinion that the EPA has *correctly* interpreted two federal environmental statutes." Federal Defendants Memo. at 8.

In response, the Plaintiffs argue that the "case" or "controversy" need not be "based solely on whether there is a sufficient adversity between the plaintiffs and the federal defendants . . . [because of] the completely adversarial opinion of the private defendants." Opp. at 9-10. Further, they assert that "there are differences between the plaintiffs' and federal defendants' positions on central issues and there are certainly differences of opinion between plaintiffs and the private defendants." *Id.* at 13.

---

[4] The Declaratory Judgment Act affords relief only in "a case of actual controversy within the court's jurisdiction." 28 U.S.C. § 2201.

The Plaintiffs muddy the analytical waters, conflating the claims against the Federal Defendants with those against the Private Defendants.[5] For the federal courts to have jurisdiction to hear a case, a plaintiff must have a live case or controversy with each defendant.[6] While there is evidently a live dispute between the Private Defendants and the Plaintiffs – being litigated under the CWA citizen-suit provisions in Idaho – and while the Private Defendants clearly disagree with the position of EPA (and the Plaintiffs) on the necessity for an NPDES permit on these facts, there is no real dispute between the Plaintiffs and EPA arising from its interpretations of the two environmental statutes.[7] As there is no injury resulting from a "putatively illegal action," *Linda R. S. v. Richard D.*, 410 U.S. 614, 617 (1973), by the Federal Defendants, and as there is no "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment," *Maryland Casualty Co.*, 312 U.S. at 273, standing

---

[5] The Plaintiffs do note that, "[n]o case cited by any defendant suggests that declaratory judgment cannot be had, or that a plaintiff cannot bring in all interested parties whose actions have affected or threaten to affect a plaintiff once standing has been satisfied. Once a plaintiff has standing, *he has standing.*" Opp. at 13 (emphasis in original). *See also* Opp. at 16 n.9 ("The adversity required in declaratory judgment actions is supplied in part by the federal defendants and by the private defendants."). But the burden lies on the Plaintiffs to show that jurisdiction is proper as to the claims against each defendant and such superficial treatment will not survive a motion to dismiss.

[6] It is not sufficient that a plaintiff has a live dispute with Defendant A and that Defendant A might have a similar dispute with Defendant B; the plaintiff must have a live dispute with Defendant B as well. The triangle drawn by the Amended Complaint fails in this basic requirement.

[7] It is, of course, understandable that the Plaintiffs would prefer to have the Federal Defendants in this lawsuit to explain their own Interim Guidance and to defend their interpretation of the CWA and FIFRA. That common-sense approach does not suffice to establish a case or controversy, nor does it create a case arising under federal law.

appears to be absent.[8] *See Hydro Investors, Inc. v. FERC*, 351 F.3d 1192, 1195 (D.C. Cir. 2003) (only aggrieved parties may seek judicial review of agency decisions and, to establish Article III standing, the plaintiff must show that the agency's action has caused it some concrete injury).

The Plaintiffs urge this Court to recognize that the threat of litigation under the CWA creates a case or controversy with the Federal Defendants. The D.C. Circuit has recognized that "[a] credible threat of imminent prosecution can injure [a] threatened party by putting her between a rock and a hard place – absent the availability of preenforcement review, she must either forego possibly lawful activity because of her well-founded fear of prosecution, or willfully violate the statute . . . ." *Navegar*, 103 F.3d at 998. Such a threat must be "credible and immediate, and not merely abstract or speculative." *Id.* While the threat of litigation is very real, and indeed has come to fruition in an action brought by the Private Defendants, as plaintiffs, in federal district court in Idaho, that lawsuit does not involve the Federal Defendants. Despite the Plaintiff's claim that "*but for* the [Federal Defendants'] refusal of a permit, plaintiffs would not be threatened with the harm facing them", Opp. at 12 (emphasis added), the mere fact that EPA issues or denies permits under the CWA does not, by itself, create an adversarial relationship, nor does it create a case or controversy between it and the Plaintiffs.[9] To the extent the Plaintiffs rely on this "but for" reasoning to establish

---

[8] The Plaintiffs argue that the issuance of a 60-day notice letter is sufficient to make declaratory judgment available, citing *Shields v. Norton*, 289 F.3d 832, 836 (5th Cir. 2002). Opp. 12-13. The 60-day notice is demonstrative of the dispute between the Plaintiffs and the Private Defendants. It does not create or establish a dispute between the Plaintiffs and the Federal Defendants.

[9] The cases cited by the Plaintiffs are not to the contrary. Unlike this case, *Culinary Workers v. Del Papa*, 200 F.3d 614, 617-18 (9th Cir. 1999) involved the threat of suit by the government agency itself. Further, *Shields v. Norton*, 289 F.3d 832, 836 (5th Cir. 2002) found that the "suit does not present justiciable issues and the district court was without jurisdiction to decide the case."

standing, their efforts are unavailing.

        2.      *Denial of Permit Application and Section 1369 of the Clean Water Act*

In addition to their more generalized arguments regarding Article III standing, GCMAD and Gem County propose that EPA's denial of GCMAD's permit application creates a case or controversy and provides sufficient grounds for subject-matter jurisdiction. Specifically, the Plaintiffs propose that EPA has responded to GCMAD's request for a permit, finding that it would not issue such permits for pesticide applications. They propose that this was "final action" by EPA that is reviewable by this Court. Opp. at 19 (the refusal to issue a permit is "on its face a final action").

In passing the CWA, Congress created a comprehensive regulatory scheme to control the discharge of waste and pollutants. The Act makes unlawful any pollutant discharges into navigable waters, except as authorized by other provisions of the CWA including sections 1311 and 1342. 33 U.S.C. § 1311(a), 1342. EPA enforces the CWA through the National Pollutant Discharge Elimination System ("NPDES"). *Pennsylvania Mun. Auth. Ass'n v. Horinko*, 292 F. Supp. 2d 95, 97 (D.D.C. 2003). Under this system, EPA may issue permits for the discharge of otherwise prohibited pollutants. 33 U.S.C. § 1342(a)(1).

GCMAD applied for a permit under the NPDES. In response, EPA sent an email clarifying that EPA would not be issuing permits for pesticide applications because it believes that the application of pesticides consistent with FIFRA does not constitute the discharge of a pollutant requiring an NPDES permit under the CWA. There is some question regarding whether this email constitutes a final action that is made reviewable by the Administrative Procedure Act, 5 U.S.C.

§ 704 ("APA"). Whether the email is "final action," as proposed by Plaintiffs, cannot be decided by this Court.

Under the CWA's judicial review provision, parties affected by EPA actions, including an action "issuing or denying any permit under section 1342 of this title", may appeal to the Circuit Courts of Appeals for the "Federal judicial district in which such person resides or transacts business which is directly affected by such action upon application by such person." 33 U.S.C. § 1369(b)(1). This Court need not decide whether all the jurisdictional requirements of Section 1369 have been met. It is sufficient to find that, in any event, the Plaintiffs would be required to dispute the actions of the Federal Defendants, whether final or otherwise, in the Court of Appeals for the Ninth Circuit, not here. *See, e.g.*, *Horinko*, 292 F. Supp. 2d at 107 ("Section 1369(b)(1) confers exclusive jurisdiction upon the Circuit Court of Appeals").

The Plaintiffs attempt to avoid this conclusion by artfully stating that they "are not asking this court or any other to review the issuance or denial of the applied for permit . . . . The issue here is not whether the Administrator properly denied the permit." Opp. at 25 n.11. This position is consistent with the Amended Complaint, which does not seek relief from this alleged denial. Indeed, EPA's reason for failing to act on the permit application is that, like the Plaintiffs, it is of the opinion that no CWA permit is required for pesticide applications that are consistent with FIFRA and its regulations. But, by so arguing, the Plaintiffs relinquish any claim to a case or controversy with the Federal Defendants grounded in the permit application. If there is any legitimate ground for alleging a case or controversy involving the permit application, it involves a dispute over the issuance or denial of a permit. Such issuance or denial is, by statute, only reviewable in the Circuit Courts of Appeals for the judicial district in which such person resides or

transacts business which is directly affected by such action. 33 U.S.C. § 1369(b)(1). If, however, there is no issue regarding "whether the Administrator properly denied [a] permit", as the Plaintiffs argue, then they have not alleged a case or controversy sufficient for standing. They cannot have it both ways by elevating the permit application to a case or controversy in one breath, and denying it in another to escape the jurisdictional and venue mandates of the CWA.[10]

### 3.    *Interim Guidance and Section 704 of the Administrative Procedure Act*

In addition to their argument that jurisdiction may be based upon the refusal to issue a permit, the Plaintiffs propose that jurisdiction is proper over the Federal Defendants based upon the Interim Guidance issued by EPA on July 11, 2003. This Interim Guidance advised that the application of a pesticide to waters of the United States consistent with all relevant requirements of FIFRA does not constitute the discharge of a pollutant that requires a NPDES permit under the Clean Water Act in at least two circumstances that are immediately applicable to the Plaintiffs.

The Amended Complaint asserts that the Interim Guidance is a "rule" within the meaning of the APA. Amend. Compl. ¶ 28. Plaintiffs argue that "the [Interim Guidance] is a final action which is a final decision on an interim rule." Opp. at 19.[11] Despite their word-smithing, the Interim Guidance is not yet challengeable.

Unlike the alleged denial of the permit application, the Interim Guidance does not, itself, fall squarely within the matters deemed reviewable under Section 1369.

---

[10] The Private Defendants argue that the Plaintiffs' filing of a declaratory judgment action in this Court is a "clear attempt to avoid the law of the Ninth Circuit" that might apply should the Plaintiffs have to proceed under 33 U.S.C. § 1369(b)(1). Private Defendants Memo. at 10.

[11] To the extent that the Plaintiffs urge that the Interim Guidance is part and parcel of the denial of a permit, Section 1369 of the CWA controls and this Court does not have jurisdiction.

*See* 33 U.S.C. § 1369.[12] Still, under certain circumstances, judicial review is possible under Section 704 of the APA, which states:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

5 U.S.C. § 704.

Judicial review may be obtained under the APA if the agency action is considered "final." *Atl. States Legal Found. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003). To be final, agency action must be definitive, with a direct and immediate effect on the day-to-day business of the

---

[12] 33 U.S.C. § 1369(b)(1) states:
Review of the Administrator's action (A) in promulgating any standard of performance under section 1316 of this title, (B) in making any determination pursuant to section 1316(b)(1)(C), (C) in promulgating any effluent standard, prohibition, or pretreatment standard under section 1317 of this title, (D) in making any determination as to a State permit program submitted under section 1342(b) of this title, (E) in approving or promulgating any effluent limitation or other limitation under section 1311, 1312, 1316 or 1345 of this title, (F) in issuing or denying any permit under section 1342, and (G) in promulgating any individual control strategy under section 1314(*l*), may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts business which is directly affected by such action upon application by such person. Any such application shall be made within 120 days from the date of such determination, approval, promulgation, issuance or denial, or after such date only if such application is based solely on grounds which arose after such 120th day.

challenging party. *Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm'n,* 324 F.3d 726, 731 (D.C. Cir. 2003). It must mark the consummation of the agency's decision-making process, not be merely interlocutory in nature, and the action must be one by which rights or obligations have been determined. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

EPA has made clear that the Interim Guidance is just that: interim guidance upon which public comment would be solicited and considered before issuing a final interpretation and guidance. In its interim form, this guidance is interlocutory and does not finally determine legal rights or obligations. Rather, EPA has provided immediate guidance to regional administrators after certain cases from the Ninth Circuit cast uncertainty upon NPDES permitting requirements, but it remains subject to notice and comment prior to consummation of the agency decision-making process.

The "finality" element is interpreted in a "pragmatic" way. *FTC v. Standard Oil Co. of California*, 449 U.S. 232, 239 (1980). To regard EPA's Interim Guidance as final where it does not impose a legal obligation to obtain permits would improperly and prematurely interfere with the process by which an agency reaches a final position on matters committed to its discretion. Because a party may only petition for judicial review of final agency action, this question is not reviewable at this time. *Papago Tribal Util. Auth. v. FERC*, 628 F.2d 235, 238-39 (D.C. Cir. 1980).

The Plaintiffs argue that "the Statement and Interim Guidance *is* a final action which is a final decision on an interim rule. It may be subject to revision in the future, but is nonetheless effective *now* and will continue to be for the indefinite future." Opp. at 19. They claim that "to argue, therefore, that no final agency action exists is sophistry since it, though denied by defendants, is in fact 'the culmination of agency decisionmaking.'" Opp. at 19-20 (citing Private Defendants

Memo. at 7).

Even accepting the Plaintiffs' argument that the Interim Guidance constitutes final agency action reviewable under the APA, the Amended Complaint fails to challenge the Interim Guidance in its claims and its prayer for relief. Despite arguments in brief about alleged differences of opinion and finality of the "rule," the Amended Complaint makes no legal claim concerning the Interim Guidance. It does not allege that any "differences of opinion" are material to GCMAD's operations or that GCMAD's use of pesticides does not fit into the two circumstances identified in the Interim Guidelines. For these reasons, the Amended Complaint does not set forth a "case" or "controversy" with respect to the Interim Guidance.[13] Because federal courts are courts of limited jurisdiction under Article III, a district court does not have jurisdiction over truly "final" agency action if there is no case or controversy. *See Hydro Investors*, 351 F.3d at 1197 ("Administrative agencies need not adjudicate only Article III cases and controversies, but federal courts must.").

    4.    *Federal Question and the Declaratory Judgment Act*

The Plaintiffs attempt to rescue their case by resting subject-matter jurisdiction on the Federal Question statute, 28 U.S.C. § 1331, and the Declaratory Judgment Act, 28 U.S.C. § 2201. Opp. at 17, 18. Such reliance is misplaced and merits little attention.

Section 1331 confers jurisdiction in the federal courts for cases that "aris[e] under" the laws of the United States. 28 U.S.C. § 1331. *See Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 495 (1983) (Article III "arising under" jurisdiction is broader than federal question jurisdiction under Section 1331). Section 1331 does not independently or separately confer

---

[13] In the initial complaint, the Plaintiffs alleged that they agreed with EPA's interpretations of its statutes. While this statement has been dropped from the Amended Complaint, it remains clear that the Plaintiffs and EPA are not truly adverse.

jurisdiction. Rather, the Plaintiffs must identify a statute or law of the United States on which their claims are based. Similarly, it is well-settled that the Declaratory Judgment Act does not independently create jurisdiction. *Staacke v. Sec'y of Labor*, 841 F.2d 278, 280 (9th Cir. 1988). When a plaintiff has a legal claim under federal law, the Declaratory Judgment Act allows him to obtain a federal court declaration of his rights under that federal statute. *See C&E Serv., Inc. v. District of Columbia Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) (availability of declaratory relief presupposes the existence of a judicially remediable right). But, absent that independent legal right, the Declaratory Judgment Act does not confer jurisdiction.

### 5.   *Dismissal of Federal Defendants*

For the reasons discussed above, the Plaintiffs have failed to allege a case or controversy or advance justiciable claims against the Federal Defendants that arise under the CWA or FIFRA. Further, challenges to the propriety of the alleged denial of an NPDES permit or the Interim Guidance under either the CWA or the APA cannot now be brought in this Court. Accordingly, the Plaintiffs' Amended Complaint fails to set forth a cause of action against EPA under federal law. Neither the Federal Question statute nor the Declaratory Judgment Act changes this result and the case against the Federal Defendants must be dismissed.

## MOTION TO DISMISS BY PRIVATE DEFENDANTS

Rule 12(b)(3) of the Federal Rules of Civil Procedure allows a case to be dismissed for improper venue. Where jurisdiction is premised on a federal question, 28 U.S.C. § 1391(b) controls venue and establishes three places where venue is proper:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a

> substantial part of property that is the subject of the action is situated
> or (3) a judicial district in which any defendant may be found, if there
> is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). If the district in which the action is brought does not meet the requirements of Section 1391(b), that district court may dismiss the case or, if it is in the interest of justice, transfer the case to a proper district. 28 U.S.C. § 1406(a). *See Davis v. Am. Soc. of Civil Engineers*, 290 F. Supp. 2d 116, 120 (D.D.C. 2003).

The Plaintiffs acknowledge that the provisions of Section 1391 apply to the venue determination. Opp. at 28. They argue that "venue over all such defendants is proper so long as at least one properly selected official defendant resides in the District where the action is filed . . . ." *Id.* As the Federal Defendants have been dismissed, unless venue is otherwise appropriate under Section 1391, dismissal or transfer is appropriate.

Neither of the Private Defendants resides in this district. Further, as to the claims between the Plaintiffs and the Private Defendants, any "part of the events or omissions giving rise to the claim" that may have occurred in this district are insubstantial at best. Indeed, the fact that "the laws enacted, the policy determinations arrived at, and the fundamental actions taken to effectuate the statutes and policy determinations occurred in this District" cannot alone be grounds for venue here. Opp. at 29-30. Absent the Federal Defendants, this is an issue of local concern affecting the interests of Idaho and its residents. Venue is more appropriately laid in the United States District Court for the District of Idaho.

Although the interests of justice often require transfer rather than dismissal, *Davis*, 290 F. Supp. 2d at 120, this determination rests within the sound discretion of the court. *James v. Booz-Allen & Hamilton, Inc.*, 227 F. Supp. 2d 16, 25 (D.D.C. 2002). In this case, there is a separate

action involving the Plaintiffs and Private Defendants currently pending in Idaho District Court. That action has been stayed pending the disposition of the motions brought by the defendants here. The Idaho litigation involves essentially the same facts and legal issues as remain between the Private Defendants and the Plaintiffs. Accordingly, to transfer would merely create duplicative litigation in the same district court and is unnecessary to preserve the interests of justice. Accordingly, the complaint against the Private Defendants will be dismissed for improper venue.

## CONCLUSION

For the reasons stated in this Memorandum Opinion, the Federal Defendants' Motion to Dismiss for lack of subject-matter jurisdiction is **GRANTED**. The Private Defendants' Motion to Dismiss for improper venue is **GRANTED**. The case is **DISMISSED**.

A separate Order accompanies this Memorandum Opinion.

**SO ORDERED**.

DATE:   January 4, 2005.                                     /s/                                    
                                                                         ROSEMARY M. COLLYER
                                                                         United States District Court Judge